UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20766-CIV-COOKE/BANDSTRA

UNITED STATES OF AMERICA,

vs.

ISACHI GIL,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant's Motion to Suppress Evidence (D.E. 26) filed December 2, 2010. On December 10, 2010, this motion was referred to the undersigned for all necessary and proper action by the Honorable Marcia G. Cooke pursuant to 28 U.S.C. §636(b). Accordingly, the undersigned conducted an evidentiary hearing on this motion on January 4, 2011. Based on the facts as found herein, and applicable law, and in consideration of oral argument of counsel, the undersigned recommends that Defendant's Motion to Suppress Evidence be DENIED.

## FINDINGS OF FACT[1]

On August 10, 2010, Susan Shimpeno, a Special Agent with the United States Federal Bureau of Investigation, applied for a search warrant for the residence of defendant, Isachi Gil, in connection with a federal investigation of a scheme to defraud Medicare through the filing of false and fraudulent claims by Ideal Home Health, Inc., ("Ideal") a Florida corporation located in Miami, Florida. Shimpeno Aff'd. ¶ 2. Special Agent Shimpeno, as the affiant to the supporting affidavit, advised the Court that this investigation was based on interviews with defendant and an unnamed co-conspirator as well as a review of documents and data acquired during the investigation. Special Agent Shimpeno described relevant aspects of the Medicare program, procedures for submission of claims, and reimbursements available to home health care agencies as providers of Medicare services. Special Agent Shimpeno then advised that a cooperating subject ("CS"), as a patient recruiter for Ideal, told the affiant that defendant submitted claims for home health care services she allegedly provided, when, in fact, she was out of the country at the time. Shimpeno Aff'd. ¶ 19. The confidential source further advised that some of defendant's patients did not qualify for home health services. *Id.* Special Agent Shimpeno testified that she reviewed travel records from the Treasury Enforcement Communications System (TECS) maintained by the United States Customs Service and found that

---

[1] These factual findings are based on the sworn testimony of Special Agent Susan Shimpeno, United States Federal Bureau of Investigation, who was the affiant to the affidavit submitted in support of the search warrant challenged in this motion to suppress. The Court has also reviewed the search warrant itself and its supporting affidavit, as well as photographs and other exhibits submitted by the government during the suppression hearing.

defendant had made eleven international trips between October 15, 2008 and March 13, 2009; and further found that defendant had twice documented daily visits with patients eligible for medicare reimbursement while she was out of the country. Shimpeno Aff'd. ¶¶ 20-21. Special Agent Shimpeno later interviewed defendant who confirmed her handwriting on the forms used for the subject claims. Based on these facts and additional information contained in her sworn affidavit, Special Agent Shimpeno applied for and obtained a search warrant for defendant's residence to search for and seize "any and all passports" found in the residence.

Special Agent Shimpeno and other federal agents searched defendant's residence the following day. During that search, the agents looked in all areas where a passport might be located including numerous file folders found in different locations in the residence. During the search, Special Agent Shimpeno glanced at a number of documents, including insulin logs, weekly visit reports, and Medicare evaluation forms, which she immediately recognized from prior Medicare investigations and saw that they were incompletely filled out or simply contained signatures of alleged patients. Special Agent Shimpeno seized these documents which were "in plain view" during the search which she recognized as evidence of the Medicare investigation involving defendant and Ideal. No passports were found during the three hour search.

## ANALYSIS

Defendant moves to suppress the documents seized from her residence on two grounds. First, defendant argues the lack of probable cause for issuance of the search warrant in the first place due to the absence of facts concerning defendant and her alleged

criminal activities, as well as information not provided in the affidavit which might have negated any finding of probable cause by the issuing judicial officer.[2] Second, defendant argues that the agents exceeded the scope of the authorized search by searching for and seizing documents not listed in the search warrant application.

### A. Probable Cause

Both parties accurately recite federal law relevant to the requirement for probable cause to obtain a search warrant under the Fourth Amendment. Search warrants, in the first instance, are authorized under the Fourth Amendment which provides that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the places to be searched and the persons or things to be seized." U.S.Const. Amend. IV. The Fourth Amendment requires that search warrants issue only where there is probable cause to believe that fruits, instrumentalities or evidence of criminal acts exist at the place for which the warrant is requested. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause exists "if facts within the magistrate's knowledge and of which he had reasonably trustworthy information would warrant a man of reasonable caution in the belief that a crime was committed and that evidence is at the place to be searched." *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984), *cert. denied*, 469 U.S. 1021 (1985).

In reviewing whether porobable cause exists to believe a particular federal crime

---

[2]The search warrant was signed by United States Magistrate Judge Barry L. Garber on August 10, 2010.

4

was committed based on a search warrant application and supporting affidavit, the reviewing court is limited to the factual averments contained within the four corners of the affidavit. *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Whether those averments establish the commission of a crime must be reviewed by the reviewing court or magistrate judge using an objective standard. *Brown v. Texas*, 443 U.S. 47, 52 (1979); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). An objective standard means that the averments must be capable of review "independently of the police officers' subjective assertions, if the courts rather than the police are to be the ultimate enforcers of the principle." *United States v. Gooding*, 695 F.2d 78, 82 (4th Cir. 1982). The information presented "must be sufficient to allow the official to independently determine probable cause; 'his action cannot be a mere ratification of the bare conclusions of others.'" *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) (quoting *Gates*, 462 U.S. at 239).

When reviewing an affidavit to see if it contains probable cause, the entire affidavit must be read together as a whole. See *United States v. Reed*, 700 F.2d 638, 641 (11th Cir. 1983). The Supreme Court in *Gates*, has further explained:

> We also have recognized that affidavits are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area. Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of judicial refinement of the nature of "probable cause."

462 U.S. at 235. Search warrants deal in probabilities and those probabilities leave room for "common sense conclusions about human behavior." *Id.* at 231. Moreover, in reviewing a magistrate judge's determination that an affidavit contains probable cause, the

5

Supreme Court in *Gates* has said:

> after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant[.] [C]ourts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.

*Id.* at 236.

Applying these well established principles here, the undersigned finds that the search warrant affidavit under review in this case contains sufficient factual information about defendant, her suspected criminal activity in a Medicare fraud scheme, and the FBI's reasonable belief that defendant's passport(s) would likely be found in her residence to establish probable cause for a search there. The affidavit advised the Court of the status of the investigation involving defendant and the factual basis to believe that she was involved in a scheme to defraud Medicare through the filing of false and fraudulent claims using Ideal Home Care. Specifically, Special Agent Shimpeno testified that defendant, through Ideal, submitted false claims for items and services not medically necessary and/or not rendered by defendant for over a five month period between October 2008 and March 2009. The affiant further explained in some detail the Medicare program and the benefits available to home health care agencies such as Ideal. The affiant then turned to the investigation of defendant as a home health care provider who allegedly falsified documents for medical services that were not provided by her to certain medicare beneficiaries that were then billed to Medicare by Ideal. Shimpeno Aff'd. ¶ 17. The affidavit specifically alleged that defendant prepared daily blood sugar logs, nursing notes,

and weekly visit sheets indicating that she had visited and cared for Medicare beneficiaries when she was, in fact, out of the country. *Id.* The affidavit was based, in part, on information obtained from an unnamed cooperating subject (CS) who was a patient recruiter for Ideal and who knew that defendant prepared notes for services she allegedly provided when she was outside the United States. Shimpeno Aff'd. ¶ 19. The affiant also reviewed travel records maintained by the Customs Service to corroborate this information from the CS and confirmed that defendant made eleven (11) international trips between October 15, 2008 and March 13, 2009, which coincided, on two occasions, with medical services she allegedly provided to Medicare beneficiaries. Defendant was also interviewed and confirmed her signature and handwriting on the documents prepared for those visits thereby verifying that she was the nurse who provided those services. Shimpeno Aff'd ¶ 22.

While defendant complains about the lack of "facts" and corroborating information in the affidavit, the undersigned finds more than sufficient factual information concerning defendant's alleged criminal activity to support the belief that defendant was engaged in Medicare fraud during the relevant time period. Additionally, the undersigned finds sufficient probable cause to believe that defendant's passport was likely to be found in her home based on the extensive experience of the affiant who testified that a "person usually maintains their passports in their own residence." Shimpeno Aff'd. ¶ 23. The government correctly observes that the Supreme Court in *Gates* explained that the touchstone of probable cause is "practical people formulat[ing] certain common sense conclusions about human behavior." 462 U.S. at 231. The undersigned agrees with the government that one common sense conclusion about human behavior is that people ordinarily keep their

passports in their homes. The Eleventh Circuit has also found that an agent's experience about what people keep in their homes is relevant to deciding whether there is probable cause to conduct a search there. See *United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008).

In summary, the undersigned finds that the information contained in the affidavit, including the experience of the affiant, satisfied the probable cause requirement for the issuance of a search warrant for passports inside defendant's residence.

B. <u>Scope of the Search</u>

Defendant next argues that the federal agents exceeded the scope of the search warrant by examining documents that were clearly not defendant's passport and seizing them without authority under the limited scope of the search warrant issued in this case. In defendant's view, "[t]he agents allegedly had defendant's travel records from TECS... [and] used the passport as simply a pretext to get through the front door so that they could conduct a blatantly unconstitutional general search of [defendant's] residence." Motion, pg. 14. The government disagrees and argues that the search was properly conducted in all areas where a passport might be found which resulted in the discovery and seizure of incriminating evidence "in plain view" as permitted by federal law.

The Eleventh Circuit, in *United States v. Jenkins*, 901 F.2d 1075, 1081 (11th Cir. 1990), explained the "plain view" exception applicable here:

> The Fourth Amendment requires that a warrant particularly describe the place to be searched and the items or persons to be seized; exploratory rummaging is prohibited. *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987). Only items described in the search warrant may be seized. *United States v. Bills*, 555 F.2d 1250, 1251 (5th Cir. 1977); *United States v. Johnson*, 713 F.2d 654, 660 (11th Cir. 1983), *cert. denied.* 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed. 2d 695 (1984). An exception to this rule occurs

"when in the course of performing a lawful search for an item listed on the warrant, the officers come across other articles of an incriminatory character..." *Johnson*, 713 F.2d at 660. In such a case, the property may be seized under the "plain view" doctrine. Id. To justify application of the plain view doctrine, the seizing officer must (1) have independent justification for being in a position to see the items; (2) must discover the items inadvertently; and (3) must immediately observe that the items are evidence. *United States v. Blum*, 753 F.2d 999, 1002 (11th Cir. 1985) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971)). The officers must have probable cause to believe the items are evidence of the crime. *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987).

Here, the federal agents inside defendant's residence satisfied all three requirements for seizure of the subject documents under the "plain view" exception. First, they were lawfully inside defendant's residence with a properly obtained search warrant as explained above. Second, the subject documents, including insulin logs, weekly visits/time records, and patient evaluation forms, were discovered inadvertently in files and in other locations where a passport might be found. Third, and most critically here, the "incriminatory character" of the subject documents was immediately apparent to Special Agent Shimpeno based on her extensive experience with identical documents in other Medicare investigations. Special Agent Shimpeno testified that she came across these documents while looking for defendant's passport in files located in the residence and immediately recognized their relevance as evidence merely by "glancing" at the documents and noting that they were incompletely filled out and lacked required information. In the agent's experience, such documents with missing information are frequently used to submit false Medicare claims. Special Agent Shimpeno did not need to read or closely examine the documents to determine their incriminatory character. Rather, she knew "from a glance" that the items were evidence relevant to this particular Medicare investigation.

9

Defendant's opposition to the seizure of these documents results from a too narrow interpretation of the plain view doctrine which is inconsistent with similar searches approved by the Eleventh Circuit. For example in *United States v. Blum*, 753 F.2d 999 (11th Cir. 1985), a magistrate judge signed a warrant allowing agents to search for "toys, furniture, baby products and miscellaneous merchandise." While searching the warehouse, agents found two open boxes containing bills, invoices, bills of lading, and yellow pads with handwritten notes about orders. The defendant sought to suppress such documents arguing that there was no way that the agents could immediately have recognized a box full of miscellaneous papers as evidence without going through the box and reading each item to determine its evidentiary importance. The Eleventh Circuit rejected defendant's narrow interpretation of the plain view doctrine and instead agreed with the government "that the 'immediately apparent' requirement mandates only that the officers have probable cause to believe that the items are associated with criminal activity and that probable cause requires only facts sufficient to 'warrant a man of reasonable caution in the belief that certain items maybe useful as evidence of a crime.'" *Id.* at 1002. The court then found that "[o]nce the agents saw the bills, the bills of lading, etc., the evidentiary value of these would be apparent." *Id.*

Similarly, the Eleventh Circuit in *United States v. Harrington*, 761 F.2d 1482 (11th Cir. 1985) approved of a search warrant allowing a search of a defendant's home for his "passport and travel documents." Like here, while looking for the passport, the agents conducting the search came across "other items apparently of evidentiary value." The Eleventh Circuit affirmed the denial of defendant's suppression motion, explaining:

10

> The record discloses the seized items which were introduced in evidence were found either in plain view in the usual sense of the terms, i.e., on the top of the table or counter or were in plain view within drawers or closets in which the agents were entitled to look for the passport and other described documents. We therefore affirm the trial court's determination that the original warrant was not defective and that the articles seized were in "plain view."

Id. at 1484.

The undersigned finds that the same thing happened in this case. While searching the drawers and closets in defendant's apartment and the files and binders within those drawers and cabinets, the agents came across documents that were evidence of defendant's participation in a scheme to defraud Medicare. The agents did not need to read or closely examine those documents to see the incriminatory nature of those documents which was immediately apparent on their face. Accordingly, the undersigned finds that the agents did not exceed the scope of the warrant by seizing these documents.

## SUMMARY AND RECOMMENDATION

For all of the foregoing reasons, the undersigned finds that the federal agents properly obtained and executed the search warrant in this case. Accordingly, the undersigned recommends that Defendant's Motion to Suppress Evidence be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Judge Marcia G. Cooke within ten (10) days of the receipt. *See* 28 U.S.C. §636(b)(1)(C). Failure to timely file an objection shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745

11

(11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

Respectfully submitted this 12th day of January, 2011, in Miami, Florida.

Ted E. Bandstra
United States Magistrate Judge

Copies furnished to:
Honorable Marcia G. Cooke
All counsel of record